**BODY, VICKERS & DANIELS, Appellee,**

v.

**CUSTOM MACHINE, INC., Appellant.**

[*Body, Vickers & Daniels v. Custom Machine, Inc.* (1991), 77 Ohio App.3d 587.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 59087.

Decided Oct. 7, 1991.

*Jeffery F. Slavin,* for appellee.
*Donald H. Powers,* for appellant.

FRANCIS E. SWEENEY, Judge.

Defendant-appellant, Custom Machine, Inc., appeals from the judgment of the Cuyahoga County Court of Common Pleas, which rendered judgment for plaintiff-appellee and cross-appellant, Body, Vickers & Daniels, in the amount of $15,155.12.

On May 24, 1989, appellee filed a complaint against appellant alleging an account stated for attorney fees in the amount of $15,328.14. Thereafter, on September 11, 1989, four days before completion of the trial court's discovery date, appellee filed a motion for leave to amend its complaint in which, appellant claims, it eliminated the claim for an account stated and substituted a claim for compensation for the reasonable value of legal services rendered and costs advanced, further increasing the alleged amount due. Consequently, appellant filed a reply brief to appellee's motion for leave to amend its complaint, requesting the court to deny appellee's motion or, alternatively, granting the appellant an enlargement of time for discovery, briefing and preparation for trial. Subsequently, the trial court granted appellee's motion to amend its complaint and set a new trial date forty days later. The trial court did not enlarge the discovery cut-off date. Appellant then submitted additional interrogatories and a demand for production of documents. Appel-

lee never responded to appellant's additional discovery demands, and this cause proceeded to a bench trial.

At trial, Thomas Young, an attorney at Body, Vickers & Daniels, testified that sometime in June 1987, he met with representatives of Custom Machine, Inc. (hereinafter "CMI") to discuss patent protection on three machines which CMI was developing. These machines were later designated "CUS–7618, 7619 and 7620" for appellee's file purposes. These machines were very sophisticated, ultrasonic test-type equipment used in the aircraft industry. Young was also told that some of these machines had already been sold. Later, on July 27, 1987, Young had a phone conversation with Joseph Wloszek, President of CMI, in which they discussed Wloszek's upcoming trip to Japan, the urgency of proceeding with patent applications, and the need to meet with a draftsman to start the drawings required to be submitted with the patent applications. Finally, a meeting was set up for August 6, 1987 with the draftsman, John Grimes, and representatives of CMI.

On August 6, 1987, Young, Grimes, Wloszek, and one Al Ruiz met in Young's office to discuss the patent applications. Wloszek brought a large number of drawings concerning one machine in particular, that being CUS–7618. Wloszek discussed CUS–7618, a rather large machine, pointing out the areas he considered to be most important and the areas of novelty. Grimes was informed by Young at the meeting that the drawings of these machines were needed as soon as possible. Wloszek inquired whether an in-house draftsman could do the work, but was informed that, due to the specialized skill required for patent drawings, only a patent draftsman specialist, such as Grimes, could do such work. Grimes informed the parties the drawings would take a long time due to the complexity of CUS–7618. Finally, Young stated he gave CMI an oral estimate on July 27, 1987 of $10,000, exclusive of the draftsman's charge, then $15,000 due to the complexity of the large machine, for his services for CUS–7618. As for the two smaller machines, CUS–7619 and 7620, Young estimated his services would cost approximately $4,000 each. Young further testified he received instructions to proceed on each application.

Thereafter, preparation on the small applications, CUS–7619 and 7620, began while the draftsman proceeded to work on the drawing for application CUS–7618. On November 30, 1987, a bill totalling $15,155.12 was sent by Young to CMI for work done on one of the small applications, CUS–7620, and draftsman charges on the larger application, CUS–7618. Sometime in late December, Young then received a phone call, followed by a letter, from CMI instructing him to cease work on the large application, CUS–7618, unless he received explicit instructions otherwise. A meeting was then set up between

CMI and Young to discuss the bill. At the meeting, Wloszek again instructed Young to cease work on CUS–7618, requested an estimate for completion of the CUS–7618 application, and authorized Young to finish the CUS–7619 application.

Thereafter, work was completed on CUS–7619, billed and paid for by CMI. However, CMI never authorized completion on CUS–7618. Further, CMI refused to pay the November 30, 1987 bill totalling $15,155.12 for work done on CUS–7618 and 7620.

John Grimes, a technical illustrator for patent and registered trademarks, testified to meeting with Young and two others from CMI to discuss a large apparatus which he was to draw up for CMI. Grimes stated he was instructed to start work on the drawings from the prints and photos which the CMI representatives brought with them. CMI gave Grimes the whole stack of prints and photos, and Grimes proceeded with his work. Finally, Grimes testified he billed, and was paid by, Body, Vickers & Daniels for the patent drawings done for CMI.

Joseph Wloszek, President of CMI, testified that he contacted Young concerning possible patent rights on three machines, two of which, CUS–7619 and 7620, were not constructed but were mere drawings. Wloszek stated he only wanted estimates concerning the costs for such applications and never authorized any work. Wloszek stated he knew a draftsman was at the August 6, 1987 meeting to help provide an estimate of what the costs would be on the three applications. Wloszek further stated he never received any estimates until January, 1988, but received a bill from Body, Vickers & Daniels sometime in mid-December, 1987. Wloszek testified he then contacted Young and requested a meeting for December 29, 1987. Wloszek stated he paid the bill for the application on CUS–7619 because that work was authorized, and continued using Body, Vickers & Daniels after the December 29th meeting on the CUS–7619 application. Wloszek refused to pay the bill dated November 30, 1987 because that work, he stated, was never authorized.

David Stegmaier, Treasurer and Controller for CMI, testified he received the November 30, 1987 bill and informed Wloszek. Stegmaier had no knowledge of whether this work was authorized, but stated he paid the bill for the CUS–7619 application because that work was authorized. Stegmaier stated he was present at the December 29, 1987 meeting and that CMI did not inform Young that they did not intend to pay the November 30, 1987 bill, but yet authorized completion of the application on CUS–7619.

Finally, various bills and other related documents, including the unpaid November 30, 1987 bill, are a part of the record on appeal. Some of these bills have been paid by CMI; others are in dispute.

Based upon the above evidence, the trial court rendered judgment for appellee in the amount of $15,155.12 with interest from the date of judgment. Appellant timely appeals, raising two assignments of error for our review. Additionally, appellee cross-appeals, raising one assignment of error for our review. For the reasons set forth below, we affirm in part, reverse in part, and remand in accordance herewith.

Appellant's first assignment of error is as follows:

"Is a trial court's order denying defendant's repeated requests for an enlargement of time for discovery, and an adjournment of the trial date to permit defendant to conduct discovery on the fundamental issue in a new cause of action pleaded for the first time in an amended complaint, which the trial court granted plaintiff leave to file one month after a previously ordered discovery cut-off date and 35 days prior to trial, in error?"

Appellant contends the trial court abused its discretion in denying appellant's request for additional time to conduct discovery. Appellant argues appellee was permitted to assert a new and totally different cause of action when appellee amended its original complaint on an account stated to a claim for the reasonable value of attorney fees and disbursements incurred. This argument lacks merit.

Under Civ.R. 15(A), leave to amend pleadings should be freely given when justice so requires. Although the trial court is vested with the power of allowing or denying amendments, the law in Ohio endorses a liberal policy toward allowing amendments where such allowance is not sought in bad faith and does not cause undue delay or prejudice to the opposing party. *Hall v. Bunn* (1984), 11 Ohio St.3d 118, 11 OBR 417, 464 N.E.2d 516. See, also, *Hoover v. Sumlin* (1984), 12 Ohio St.3d 1, 12 OBR 1, 465 N.E.2d 377. As stated in *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 269, 297 N.E.2d 113, 122: "The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies. Civ.R. 1(B) requires that the Civil Rules shall be applied 'to effect just results.' Pleadings are simply an end to that objective." *Id.*

Similarly, continuances, like amendments, are a matter of judicial discretion, and it is well settled that the granting or denial of them is committed to the sound discretion of the trial judge. *Kidd v. Transit Co.* (1970), 24 Ohio App.2d 101, 102, 53 O.O.2d 285, 286, 265 N.E.2d 297, 298–299. Further, where a party objecting to amended or supplemental pleadings is not prepared to proceed under the new pleadings, the court may still allow an amendment under Civ.R. 15 and grant a continuance to enable the opposing party to meet the new evidence. See *Hall v. Bunn, supra,* 11 Ohio St.3d at 118, 11 OBR at 417, 464 N.E.2d at 517.

■ Finally, a trial judge retains broad discretionary authority over the length of pretrial discovery. *Rossman v. Rossman* (1975), 47 Ohio App.2d 103, 109, 1 O.O.3d 206, 209, 352 N.E.2d 149, 153. However, where a trial court's refusal to allow discovery is improvident and prejudicially affects the substantial rights of the parties, an appellate court will rectify the trial court's abuse of discretion. *Smith v. Klein* (1985), 23 Ohio App.3d 146, 151, 23 OBR 387, 392–393, 492 N.E.2d 852, 858.

■ In the instant case, appellant argues the trial court abused its discretion in denying appellant's request for a continuance to conduct additional discovery. In moving for such continuance, appellant properly complied with Civ.R. 8(F) by filing the interrogatories and document production requests with the court by attaching them to its motion to continue trial to permit discovery. In any event, the trial court did not abuse its discretion in overruling appellant's motion since appellant had ample opportunity to complete discovery. Appellee's amended pleadings did not prejudicially affect appellant's ability to prepare its theory of the case since appellee's amended pleadings did not assert a new and totally different cause of action. Further, appellant's chief defense at trial, lack of authorization, did not change under appellee's amended pleadings.

To begin, appellant's amended complaint is virtually identical to its original complaint. The amended complaint merely deletes the phrase "(account stated)" in paragraph two and increases the amount prayed for from $15,-328.14 to $17,979.34. We fail to see how this amendment to the pleadings could prejudicially affect appellant in preparing to proceed under the new pleadings. Furthermore, appellant's answer to appellee's amended complaint is identical to its original answer except for the addition of an affirmative defense that "plaintiff breached its fiduciary and ethical duties to defendant." Moreover, it is apparent from a review of the record that appellant failed to serve appellee with any requests for discovery until October 18, 1989, over a month beyond the trial court's original cut-off date for discovery and well after appellee filed its amended complaint.

Therefore, this court cannot say that the trial court abused its discretion in overruling appellant's motion for continuance. The appellant had ample opportunity to conduct discovery. Further, appellee did not assert a new and totally different cause of action through its amended pleadings.

Accordingly, appellant's assignment of error is overruled.

■ Appellant's second assignment of error is as follows:

"Is the trial court's order awarding plaintiff $15,155.12 for reasonable attorney fees and disbursements incurred, which amount coincides with a bill

for services rendered by plaintiff, in error when plaintiff fails to present any evidence at trial which justifies the amount requested, other than the bill?"

Appellant argues the verdict is against the manifest weight of the evidence. This argument lacks merit.

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. We will make every reasonable presumption in favor of the trial court's judgments. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Furthermore, the weight to be given the evidence and witness credibility are primarily for the factfinder. *Shore Shirley & Co. v. Kelly* (1988), 40 Ohio App.3d 10, 531 N.E.2d 333.

Initially, we note that this case illustrates the importance, to the legal community and the public which we serve, of obtaining a written fee arrangement prior to undertaking legal representation on behalf of a client.

Jason C. Blackford, writing in the Cleveland Bar Association's 1991 Lawyers' Desk Book and Roster on Avoiding Unintentional Grievances, states at 315:

"With regard to non-contingent fee matters, a lawyer should reduce the fee arrangement to writing. A few minutes to prepare a standard contract or to send a letter on the subject can eliminate future confusion and ease the payment by the client."

In the same Desk Book, the Cleveland Bar Association admonishes lawyers as follows in its discussion of handling fee disputes, at 336:

"The most constant and recurring difficulty between lawyers and clients relates to disputes over fees. Ethical Consideration 2–18 of the Code of Professional Responsibility suggests that a lawyer should reach 'a clear agreement with his client as to the basis of the fee charges to be made.' Such an agreement will prevent later misunderstandings and possible litigation. Although there is no mandate to do so a lawyer should reduce the terms of all fee arrangements with clients to writing, since this provides clear proof of the fee arrangement. (A variety of sample fee letters appears in this section for your use.)"

Further, the Ohio State Bar Association's Lawyers Desk Manual (1984), Chapter 1, at page 1.25, advises members of the bar to thoroughly explain in advance the work to be done, give an estimate of the cost, and confirm such arrangements in a letter to the client after the initial interview. Finally, it must be noted that the Cleveland Bar Association, as an alternative to

litigation, provides an arbitration panel of one attorney and two laymen, who will arbitrate a fee dispute between an attorney and his client if both parties will agree to submit to such arbitration. See Cleveland Bar Association's 1988 Desk Book and Roster.

In any event, four years later, this cause is now before us for resolution. In the present case, it cannot be said that the verdict is against the manifest weight of the evidence. Young testified he received authorization, after giving oral estimates on costs, to proceed upon patent applications for CUS–7618, 7619 and 7620. He and Grimes testified to the August 6, 1987 meeting with CMI representatives, including Wloszek, on CUS–7618 in which Grimes was given prints and photos of the apparatus. Grimes was further informed to proceed with the drawings. Grimes further testified to billing appellee and being paid for his work. Wloszek stated he never authorized work on CUS–7618, but later authorized Young to continue work on CUS–7619, having been billed for work on CUS–7618 yet never intending to pay for it. It is undisputed that appellant never paid for work done on CUS–7618.

Therefore, we find sufficient, competent evidence exists to support the verdict. The trial court was free to find appellee's witnesses more credible than appellant's.

Appellant's second assignment of error is overruled.

Appellee and cross-appellant raises the following assignment of error:

"The trial court erred in failing to award the plaintiff-appellee interest from November 30, 1987, when the defendant-appellant was billed for the sum awarded to the plaintiff-appellee by the court."

Appellee and cross-appellant contends the award of interest on the judgment in question should have been based on the date of the bill, November 30, 1987, as opposed to the date of judgment. This argument has some merit.

■■■ Where money becomes due under a contract, interest accrues from the time that the money due should have been paid. *Virag v. Allstate Ins. Co.* (Dec. 14, 1989), Cuyahoga App. No. 56391, unreported, at 9, 1989 WL 151291; *Braverman v. Spriggs* (1980), 68 Ohio App.2d 58, 22 O.O.3d 47, 426 N.E.2d 526, paragraph one of syllabus. Moreover, the running of interest is not delayed because the debtor denies owing the debt, but is delayed where the amount of the debt is uncertain. *Id.; Gornik v. Fuerst* (Mar. 31, 1983), Cuyahoga App. No. 45158, unreported, 1983 WL 5880.

■■ In the present case, appellant denied owing the debt. However, the debt was not uncertain. Therefore, interest accrues from the time the bill should have been paid, not necessarily on the date of the bill, November 30, 1987.

Therefore, appellee and cross-appellant's assignment of error is partially sustained. This cause is remanded with instructions to the trial court to determine when the November 30, 1987 bill was reasonably due. Interest is to accrue from that date.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

ANN MCMANAMON, J., concurs.

KRUPANSKY, C.J., concurs in judgment only.