YAROMA, Appellee and Cross–Appellant,

v.

GRIFFITHS et al., Appellants and Cross–Appellees.

[Cite as *Yaroma v. Griffiths* (1995), 104 Ohio App.3d 545.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 67635.

Decided June 13, 1995.

*Seymour R. Brown,* for appellee and cross-appellant.

*Weston, Hurd, Fallon, Paisley & Howley, William H. Baughman, Jr.* and *John G. Farnan,* for appellants and cross-appellees.

PORTER, Judge.

Defendants-appellants Raymond A. Griffiths, Mary Ann Griffiths and Rae Inn, Inc. appeal from the trial court's order granting summary judgment in favor of plaintiff-appellee John Yaroma on his claim for a brokerage commission arising

out of the Griffithses' purchase of the Dover Nursing Home in Westlake, Ohio. Defendants contend there were disputed issues of fact precluding summary judgment. Plaintiff cross-appeals the court's denial of prejudgment interest on his brokerage award. We find no error in the brokerage award and affirm it; we reverse the trial court's denial of prejudgment interest thereon.

Plaintiff Yaroma is a licensed real estate broker in Ohio. Raymond Griffiths and his wife Mary Ann are each fifty-percent shareholders of M.A.G., Inc., which operates the nursing home. The property at issue in the case is held in the Griffithses' joint names, as tenants in common.

On March 7, 1988, Raymond Griffiths individually signed a "Commission Letter–Buyers' Broker" agreement, pursuant to which he agreed to pay plaintiff, as the procuring broker of the Dover Nursing Home transaction, a commission of seven percent of the adjusted selling price, which was defined as "the net selling price the sellers accept divided by .93." This commission letter was also binding on the Griffithses' "nominee corporations, or any corporation, partnership or business entity of which he (they) are or become affiliated." The commission letter also "authorize[d] and direct[ed] the escrow agent to pay the said sum of ($ as computed), in cash, to John M. Yaroma, licensed real estate broker, for being the procuring broker in the above transaction."

On May 2, 1988, Raymond Griffiths entered into a purchase agreement to purchase the Dover Nursing Home properties from M.W. Realty, Inc. and Dover Nursing Home, Inc. for $3,500,000.

The purchase agreement contained the following provisions regarding brokerage services:

"K) It is understood by both Seller(s) and Purchaser(s) that they will retain their own respective attorneys and accountants to prepare any addendums or formal purchase agreements which they deem necessary and which shall not alter any of the terms herein, and the cost of same is to be paid by the respective parties. Any subsequent formal agreements or addendums entered into between the parties shall not alter or affect the rights of John M. Yaroma, broker, set forth herein.

" * * * *

"N) It is understood that the mentioned John M. Yaroma, broker, is known as the procuring broker and further known as the Purchaser's broker; said commission due the broker is the sole responsibility of Purchaser(s), and the Sellers shall be held harmless by said broker."

The acceptance of the purchase agreement signed by the sellers recited as follows:

"The undersigned accepts the above offer, agrees to all of the conditions stated above, and it is understood that the Purchaser(s) agrees to pay John M. Yaroma, licensed real estate broker, a commission in accordance with a separate commission letter executed by the Purchaser, and the escrow agent is hereby instructed by the undersigned to pay said commission as set forth therein. Said commission shall accrue upon the execution of this contract. The Seller is to be held harmless from any fees and commissions due said broker, John M. Yaroma."

In his deposition, Mr. Griffiths admitted that he had signed both the commission letter and purchase agreement containing the foregoing provisions. He testified that he had signed the commission letter in Florida after a telephone conversation with Yaroma and had sent the letter back to Yaroma in Cleveland.

When asked why he had signed the commission letter, he said it was because Yaroma had told him to sign it, and "we will negotiate it later." Plaintiff denied that statement. Mr. Griffiths stated that he had signed, notwithstanding the seven-percent commission provision, with which he disagreed, because he trusted Yaroma. On one other occasion he had paid Yaroma a commission as a buyer's broker on another nursing home and that commission had been negotiated.

At the August 1, 1988 closing on the Dover Nursing Home purchase, Mr. Griffiths did not bring sufficient funds to close the deal and to pay Yaroma's commission. After the transaction closed, there was a balance of $113,456 in escrow proceeds left to pay the commission. Griffiths felt that was enough to pay for the brokerage services.

In his deposition, the Chicago Title escrow agent, Mr. Newell, testified that he had originally prepared a preliminary closing statement in which the commission was recited as $263,440.85; however, when it was learned that Griffiths did not have sufficient funds to close according to the terms of the commission letter, a revised final statement was prepared reciting that the commission actually paid was $113,356.89. Plaintiff consented to the closing, but he did not waive his right to receive the balance due under the commission letter. On August 1, 1988, plaintiff wrote a letter to Newell stating as follows:

"This is to advise you that, as the buyer's broker in the above transaction, I recognize that the buyer has not deposited sufficient funds into the escrow to fully pay my commission. That notwithstanding there are not sufficient funds, I hereby authorize you to close this transaction and pay me those funds which you have available toward the commission and that I will not look to either Chicago Title Insurance Company or the proceeds of the AmeriTrust Company, N.A. loans to make up this deficiency.

"By signing this letter I do not waive any rights or actions I have to proceed against Raymond A. Griffiths or his nominees for the balance due me for commissions pursuant to my written agreement with Mr. Griffiths."

This was apparently hand-delivered to the escrow agent at the closing when an impasse developed over payment of the commission. Defendants opposed plaintiff's motion for summary judgment and filed an affidavit that disputed that plaintiff was the procuring cause, that there was no meeting of the minds on the commission arrangement, and that defendant Raymond Griffiths signed the commission letter only because plaintiff said, "Just sign it—we will negotiate it later." He trusted plaintiff, with whom he had dealt before. Plaintiff countered that the contract, *i.e.*, the commission letter and the purchase agreement, was clear and unambiguous on its face, that parol evidence was not admissible to contradict or vary the terms, and that plaintiff was entitled to judgment as a matter of law.

The trial court entered summary judgment for the plaintiff on the balance due on his brokerage claim ($150,083.96), but denied plaintiff's motion for prejudgment interest under R.C. 1343.03(A). Defendants filed a timely appeal from the summary judgment and plaintiff cross-appeals the denial of interest.

We will address defendants' three assignments of error together, as they all relate to whether or not there were any material issues of fact that precluded summary judgment:

"I. The trial court committed reversible error in granting summary judgment in favor of the plaintiff on Count I of the amended complaint because a genuine issue of material fact existed with respect to whether there was a meeting of the minds on the agreement for broker's commissions that served as the basis for that count.

"II. The trial court committed reversible error in granting summary judgment in favor of the plaintiff on Count I of the amended complaint because a genuine issue of material fact existed with respect to whether the plaintiff's representation that the amount of the broker's commission would be negotiated later fraudulently induced defendant Raymond Griffiths to sign the broker's agreement that served as the basis for that count.

"III. The trial court committed reversible error in granting summary judgment in favor of the plaintiff on Count I of the amended complain because a genuine issue of material fact existed with respect to whether the plaintiff was the procuring cause of the real property sale subject to the broker's agreement that served as the basis for that count."

Defendants' appeal turns on whether they can offer parol evidence which explains or contradicts the commission letter and the purchase agreement. Such

proffered evidence would show, according to defendants, that there remain disputed issues of material fact precluding summary judgment on whether there was a valid written commission contract and a meeting of the minds, and whether plaintiff was the procuring cause of the transaction. Defendants also contend that because Mr. Griffiths signed the commission letter under Yaroma's promise that they would "negotiate it later," the contract was induced by fraud. We find no merit to these arguments for the reasons hereafter stated.

## STANDARDS FOR SUMMARY JUDGMENT

■ Under Civ.R. 56, summary judgment is proper when (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379–1380; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 471–472, 364 N.E.2d 267, 273–274. It is well settled that the party seeking summary judgment bears the burden of showing that no genuine issue of material fact exists for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 2556, 91 L.Ed.2d 265, 278; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798, 801–802. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 358–359, 604 N.E.2d 138, 140.

However, the nonmoving party must produce evidence on any issue for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd.* (1991), 59 Ohio St.3d 108, 111, 570 N.E.2d 1095, 1099; *Celotex, supra,* 477 U.S. at 322–323, 106 S.Ct. at 2552–2553, 91 L.Ed.2d at 273–274. In accordance with Civ.R. 56(E), "a nonmovant may not rest on the mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." *Chaney v. Clark Cty. Agricultural Soc.* (1993), 90 Ohio App.3d 421, 424, 629 N.E.2d 513, 515.

"This court reviews the lower court's granting of summary judgment *de novo.*" *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271; *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 711, 622 N.E.2d 1153, 1157 ("We review the judgment independently and without deference to the trial court's determination").

■ In resolving the issues presented by this appeal, we are mindful that "[t]he construction of written contracts and instruments of conveyance is a matter

of law." *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 214, 567 N.E.2d 262, 264. Our goal is to arrive at the intent of the parties, which is presumed to be stated in the contract documents. As recently held in *The Toledo Group, Inc. v. Benton Industries* (1993), 87 Ohio App.3d 798, 805, 623 N.E.2d 205, 209–210:

"The interpretation of a written contract is a matter of law for the court. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph one of the syllabus. The purpose of contract construction is to effectuate the intent of the parties. *Skivolocki v. East Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. The intent of the parties is presumed to reside in the language they chose to employ in the agreement. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. Common words appearing in the instrument will be given their plain and ordinary meaning unless manifest absurdity results or some other meaning is clearly evidenced from the face or overall contents of the contract. *Alexander, supra,* at paragraph two of the syllabus."

This case presents a brokerage commission dispute between two relatively sophisticated parties. Mr. Griffiths has twenty years of experience in buying and operating nursing homes and has dealt with brokers before, including plaintiff, whom he has known for fifteen years. It was Mr. Griffiths who invited plaintiff to participate in the transaction. His affidavit stated, "Having procured this opportunity [to purchase the nursing home] and as a matter of concern for and friendship with Mr. Yaroma, I contacted Mr. Yaroma and offered him the opportunity to act as 'broker' to formalize the offer and proceed with the transaction."

Mr. Griffiths also admitted in his deposition that he had signed the commission letter and knew its terms, that it was filled in at the time he signed it, and that he later signed the purchase agreement, which also recognized the plaintiff as the procuring cause and referred to the commission letter containing the seven-percent commission on the adjusted selling price.

Whether, as defendant says, he signed the commission letter only because plaintiff said that they would negotiate it later does not materially alter the fact that he signed the purchase agreement, which incorporated his obligation under the commission letter by reference. In other words, the commission letter, dated March 7, 1988, was ratified and adopted by the purchase agreement signed by Mr. Griffiths and the sellers of the nursing home on May 2, 1988. The terms of the purchase agreement resolved the issues of whether there was a meeting of the minds and who was the procuring cause and the issue concerning the statement that the commission would be negotiated later (fraud in the inducement) raised by this appeal.

Paragraphs K and N of the purchase agreement unmistakably placed the burden of the broker's commission on Griffiths:

"K) * * * Any subsequent formal agreements or addendums entered into between the parties shall not alter or affect the rights of John M. Yaroma, broker, set forth herein.

" * * *

"N) It is understood that the mentioned John M. Yaroma, broker, is known as the procuring broker and further known as the Purchaser's broker; said commission due the broker is the sole responsibility of the Purchaser(s), and the Sellers shall be held harmless by said broker."

The acceptance of the purchase agreement by the sellers explicitly referred to the separate commission letter:

"The undersigned accepts the above offer, agrees to all of the conditions stated above, and it is understood that the Purchaser(s) agrees to pay John M. Yaroma, licensed real estate broker, a commission in accordance with a separate commission letter executed by the Purchaser, and the escrow agent is hereby instructed by the undersigned to pay said commission as set forth therein. Said commission shall accrue from the execution of this contract. The Seller is to be held harmless from any fees or commissions due said broker, John M. Yaroma."

When Raymond A. Griffiths signed this purchase agreement, it constituted a ratification and adoption of the commission letter. His action squarely contradicts the alleged contemporaneous parol modification claimed by defendant on March 7 that it was subject to negotiation. Defendants do not claim that they were fraudulently induced to enter into the purchase agreement.

■ Even looking at the evidence in the light most favorable to defendant by taking his statement that Yaroma said, "Just sign it—we will negotiate it later," to be true, summary judgment was proper even if the purchase agreement did not constitute a ratification of the commission letter. As the court in *Busler v. D & H Mfg., Inc.* (1992), 81 Ohio App.3d 385, 390, 611 N.E.2d 352, 356, held:

"[M]any Ohio cases have held that a party may offer evidence of prior or contemporaneous representations to prove fraud in the execution or inducement of an agreement. See, *e.g., Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 84, 523 N.E.2d 902, 908. Indeed, without such evidence it would be difficult if not impossible to prove fraud. However, it is important to realize that the law has not allowed parties to prove fraud by claiming that the inducement to enter into an agreement was a promise within the scope of the integrated agreement but which was not ultimately included in it. *Id.* at 84, 523 N.E.2d at 908; *AmeriTrust Co. v. Murray* (1984), 20 Ohio App.3d

333, 335, 20 OBR 436, 438, 486 N.E.2d 180, 183. Hence, if there is a binding and integrated agreement, then evidence of prior or contemporaneous representations is not admissible to contradict the unambiguous, express terms of the writing. Restatement, *supra,* at 136, Section 215."

In the case before us, the statement "Just sign it—we will negotiate it later" was allegedly made just prior to or contemporaneous with the defendant's signing of the commission letter. The promise that the size of the broker's commission would be negotiated later should have been included in the letter, as it was clearly within the scope of the integrated agreement. Defendants could have achieved this by simply noting on the commission letter that the percentage was subject to future negotiation. They cannot now use plaintiff's alleged contemporaneous representation to establish fraud. "[T]he law has not allowed parties to prove fraud by claiming that the inducement to enter into an agreement was a promise within the scope of the integrated agreement but which was not ultimately included in it." *Busler, supra,* 81 Ohio App.3d at 390, 611 N.E.2d at 356.

This principle also receives emphasis from an analogous situation where parol evidence is offered to defeat a writing that satisfies the Statute of Frauds. See *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 274–276, 533 N.E.2d 325, 334–335, where the Supreme Court stated:

"Immediately apparent from the foregoing is the observation that the law will not countenance any and every kind of fraud allegation as capable of overcoming the Statute of Frauds. Whether the alleged misrepresentation is of a promise of future performance or of a then-present fact, it will not defeat the Statute of Frauds unless such fraudulent inducement is premised upon matters which are wholly extrinsic to the writing. The Statute of Frauds may not be overcome by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.

" * * *

"We therefore hold that when a party voluntarily places his signature upon a note or other writing within the Statute of Frauds, and where that party's sole defense to an action brought upon the writing is that a different set of terms was orally agreed to at that time, such defense shall not be countenanced at law regardless of the theory under which such facts are pled. In such event, the writing alone shall be the sole repository of the terms of the agreement."

Therefore, although it is in dispute whether Yaroma actually made the statement that the percentage of his commission would be negotiated later, this dispute is not a material issue precluding summary judgment. See, also, *Maust v. Bank One Columbus* (1992), 83 Ohio App.3d 103, 108, 614 N.E.2d 765, 768 (parol evidence rule bars plaintiff's claim that he was fraudulently induced to sign a release by the defendant bank's oral assurance that it would not contest his future unemployment claims, when the assertion is "directly controverted by the agreement itself, which states that the bank reserves the right to vigorously oppose such a claim"); *AmeriTrust Co. v. Murray* (1984), 20 Ohio App.3d 333, 335, 20 OBR 436, 438, 486 N.E.2d 180, 183 (parol evidence not admissible to show that defendant was fraudulently induced to sign guaranty by plaintiff's representations that defendant was guaranteeing only one debt and that the borrower's assets greatly exceeded the debt; "appellant cannot argue that he was the victim of fraud and misrepresentation when the terms of the written guaranty, which he signed, specifically refute that argument").

Defendants also cannot advance parol evidence to show that plaintiff's statement that the commission percentage would be negotiated later prevented a meeting of the minds. As the Ohio Supreme Court in *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, 501, held:

"Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement. *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus; *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 544 N.E.2d 920, syllabus. Only when the language of a contract is unclear or ambiguous, or when the circumstances surrounding the agreement invest the language of the contract with a special meaning will extrinsic evidence be considered in an effort to give effect to the parties' intentions. *Kelly, supra,* at 132, 31 OBR at 291, 509 N.E.2d at 413. When the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150."

We find that the language in the commission letter and the purchase agreement is clear and unambiguous and that extrinsic evidence could not be considered. The alleged representation would not aid the court in determining the meaning of the contract, but would in fact squarely contradict the terms of the agreement the parties reached.

Therefore, the dispute regarding whether or not plaintiff told Griffiths to "[j]ust sign it—we will negotiate it later" is not material, as that evidence would not have been admissible at trial.

The cases on which defendants rely to support their theory that parol evidence is admissible to show that the seven-percent commission agreement was negotiable do not support their cause or are readily distinguishable. *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App.3d 78, 84, 523 N.E.2d 902, 908 (the doctor's claim that he was orally promised a shareholder position in an anesthesiologist group when he became board certified "would add to the contract, not vary or contradict the existing [written] terms"); *William Fannin Bldrs., Inc. v. Deluth Constr. Co.* (Sept. 29, 1981), Franklin App. No. 81AP–141, unreported, at 5, 1981 WL 3487 (challenged parol testimony "goes toward proving that the parties named on the contract were not intended to be bound, which would not be proper grounds for admission. * * * This clearly contradicts and varies the unambiguous terms of the writing"); *Snell Environmental Group v. Warren Cty. Bd. of Commrs.* (Aug. 3, 1983), Warren App. No. 64, unreported 1983 WL 4436 ("There was no term in the document that set forth a standard of compensation ascertainable by proof that would permit enforcement of the parties contract * * * as a matter of law there was no contract for Phase II services"); *BancOhio Natl. Bank v. Coleman* (Nov. 29, 1984), Cuyahoga App. No. 48108, unreported, 1984 WL 3630 (home owner could recover from waterproofing company that promised to make basement completely watertight where there was failure of consideration and violation of Ohio consumer laws). These authorities do not alter the result we have reached herein.

■ Defendants also contend that there is a material fact in dispute regarding whether Griffiths or Yaroma was the procuring cause of the transaction. In the commission letter and the purchase agreement, Mr. Griffiths specifically agreed that Yaroma is the procuring broker and the purchaser's broker, and authorized the escrow agent to disburse funds accordingly. Based on the previous discussion, defendants cannot contradict or vary the terms of the written instruments which recognized plaintiff's role as the procuring cause.

Based on the foregoing, defendants' Assignments of Error I, II and III are overruled. Summary judgment against defendants is affirmed.

## CROSS–APPEAL

Plaintiff's sole assignment of error on his cross-appeal states as follows:

"The trial court committed error in denying plaintiff cross-appellant's claim and motion for prejudgment interest pursuant to Section 1343.03(A) R.C. where the amount of its judgment reflecting the balance due plaintiff from defendants upon real estate commission was subject to mathematical calculation, and where plaintiff cross-appellant made demand in the complaint for prejudgment interest."

The purchase price for the Dover Nursing Home was $3,500,000. In accordance with the commission letter's formula, the $3,500,000 selling price is divided by .93 to derive the adjusted selling price, to which the seven-percent commission factor is applied for a total commission of $263,440.85 due on closing August 1, 1988.

The record reveals that on the closing date, plaintiff was paid $113,356.89, leaving a balance due of $150,083.96; he did not waive the balance of commission but accepted the $113,356.89 under protest. Plaintiff claims in his cross-appeal to be entitled to interest on the balance due from August 1, 1988, the closing date. We find merit to this argument. R.C. 1343.03(A) provides:

"[W]hen money becomes due and payable upon any bond, bill, note or other instrument of writing, upon any book account, upon any settlement between parties, upon verbal contracts entered into and upon judgments, decrees and orders of any judicial tribunal for the payment of money arising out of tortious conduct or a contract or other transaction, the creditor is entitled to interest at the rate of ten per cent per annum and no more * * *."

Prejudgment interest is available under R.C. 1343.03(A) when the claimed amount due is "capable of ascertainment by computation or reference to well-established market values at the time the cause of action arose." *Worrell v. Multipress* (1989), 45 Ohio St.3d 241, 249, 543 N.E.2d 1277, 1285; *Conti Corp. v. Ohio Dept. of Adm. Serv.* (1993), 90 Ohio App.3d 462, 469, 629 N.E.2d 1073, 1078; *Ford v. Tandy Transp., Inc.* (1993), 86 Ohio App.3d 364, 385, 620 N.E.2d 996, 1009–1010. "Pre-judgment interest consistently has been awarded only where the amount owed under the contract is clear and certain, or is at all times capable of mathematical calculation by application of a formula." *Software Clearing House, Inc. v. Intrak, Inc.* (1990), 66 Ohio App.3d 163, 172, 583 N.E.2d 1056, 1061. Where money becomes due under a contract, interest accrues from the time that the money due should have been paid. *Body, Vickers & Daniels v. Custom Machine, Inc.* (1991), 77 Ohio App.3d 587, 594, 602 N.E.2d 1237, 1241–1242. The running of interest is not delayed because the debtor denies the debt. *Id.*

In the present case, the amount owed to plaintiff was clear and certain and capable of mathematical calculation on the closing date. The contract set forth that plaintiff was to receive seven percent of the adjusted selling price. The adjusted selling price was to be computed by dividing the net selling price by .93.

Absent a contrary contractual arrangement, a brokerage commission was due upon consummation of the sale of property. *Mahon–Evans Realty, Inc. v. Spike* (1986), 33 Ohio App.3d 268, 270, 515 N.E.2d 953, 955–956; *Ballard v. Thompson* (1965), 5 Ohio App.2d 92, 34 O.O.2d 197, 214 N.E.2d 102, paragraph

558

one of syllabus. Therefore, interest began to run on August 1, 1988 on the unpaid balance of plaintiff's commission fee.

Plaintiff was entitled to ten percent interest on his judgment of $150,083.91 from August 1, 1988 until paid pursuant to R.C. 1343.03(A). The cross-appeal assignment of error is sustained.

Summary judgment for plaintiff below is affirmed; denial of interest on the judgment is reversed and remanded for further proceedings consistent with this opinion.

*Judgment affirmed in part, reversed in part and cause remanded.*

JAMES D. SWEENEY, P.J., and NUGENT, J., concur.