**BARRETTE, Appellant,**

v.

**LOPEZ, Appellee, et al.**

[Cite as *Barrette v. Lopez* (1999), 132 Ohio App.3d 406.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 CA 214.

Decided March 22, 1999.

*Steven M. Goldberg* and *Martin S. Goldberg,* for appellant.

*Douglas G. Leak,* for appellee.

Vukovich, Judge.

The following appeal arises from the Mahoning County Court of Common Pleas decision wherein Dr. Raul Lopez was absolved from liability for medical malpractice. For the following reasons, the decision of the trial court is affirmed in part and reversed in part, and the cause is remanded.

# I. FACTS

In January 1991, Beverly Barrette consulted Dr. Alfred Reed Hoffmaster, complaining of a pain in her left side. Hoffmaster determined that Barrette's kidney was badly damaged and needed to be removed. Consequently, Dr. Hoffmaster performed surgery on Barrette to remove the nonfunctioning kidney. It appears that during the surgery Dr. Hoffmaster perforated Barrette's colon, necessitating further surgeries to correct the problem.

Dr. Hoffmaster enlisted the services of appellee, Dr. Raul Lopez, to repair the perforation. A colostomy was performed to repair the perforated portion. Approximately eight months later Barrette returned to the hospital so that appellee could take down the colostomy. During the procedure, Barrette's small intestine was perforated several times. Ten days later Barrette returned for further surgery to repair the newly discovered perforations. While performing this surgery, appellee removed forty percent of Barrette's stomach, which he believed to be ischemic. Barrette had not been informed of nor had she consented to the partial removal of her stomach. Three days later appellee took Barrette back into surgery, whereupon five more perforations were discovered and repaired. Eventually, after numerous additional surgeries, Barrette was placed on total parenteral nutrition for the remainder of her life.

On December 30, 1992, Barrette filed a complaint against Dr. Hoffmaster for medical negligence. Dr. Hoffmaster subsequently died on May 6, 1995. Consequently, Norma W. Hoffmaster, executor of the estate of Hoffmaster, was substituted as defendant. Hoffmaster's estate settled the complaint with Barrette's estate during the trial and, consequently, Hoffmaster is not a party to this appeal.

An amended complaint was filed on June 22, 1993, wherein Barrette added appellee as a party to the complaint. Barrette alleged various medical negligence claims against appellee. A third amended complaint was filed with the court's permission on August 9, 1995. This amended complaint added the following additional cause of action:

"[T]he defendant, Dr. Raul Lopez[,] while attempting to repair said damage removed a substantial portion of plaintiff's stomach without authorization causing additional damages to plaintiff."

A fourth amended complaint was finally filed nine days before trial, wherein appellant, Mary Kate Barrette, executor of the estate of Beverly Barrette, was substituted in Barrette's place.

On August 28, 1995, before trial, appellee orally requested an order *in limine* to prohibit appellant from introducing evidence concerning her claim of lack of

consent because sufficient notice had not been given for appellee to defend the issue. The court ultimately granted the motion.

On September 6, 1995, the jury reached a unanimous verdict in favor of appellee. The trial court filed a judgment entry based on the jury verdict on September 26, 1995. Appellant filed a notice of appeal from that decision on October 2, 1995.

Appellant raises five assignments of error on appeal.

## II. ASSIGNMENT OF ERROR NO. ONE

"The trial court committed prejudicial error by refusing to let the plaintiff introduce evidence of lack of consent for an unauthorized surgery and later refusing to charge on the subject."

Appellant argues that the trial court improperly prevented her from presenting her claim for lack of consent after it authorized appellant to file a third amended complaint raising the claim of lack of consent.

## A. LAW

The law concerning this assignment of error is found in Civ.R. 15(A). Civ.R. 15(A) allows a party to amend its pleadings by leave of court. Leave of court will be freely given where justice so requires.

The rule demonstrates a liberal policy toward the allowance of amendments. *Burton v. Middletown* (1982), 4 Ohio App.3d 114, 120, 4 OBR 205, 210–212, 446 N.E.2d 793, 800–801. Ohio law endorses a liberal policy toward allowing amendments when the allowance is not being sought in bad faith and it would not cause undue delay or prejudice to the opposing party. *Body, Vickers & Daniels v. Custom Machine, Inc.* (1991), 77 Ohio App.3d 587, 591, 602 N.E.2d 1237, 1239–1240, citing *Hall v. Bunn* (1984), 11 Ohio St.3d 118, 11 OBR 417, 464 N.E.2d 516. The Supreme Court of Ohio best addressed this policy in *Peterson v. Teodosio* (1973), 34 Ohio St.2d 161, 175, 63 O.O.2d 262, 269–270, 297 N.E.2d 113, 122 wherein the court stated: "The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies."

The amended pleading must also meet the requirements of Civ.R. 8(A), which requires pleadings to contain a "short and plain statement of the claim showing that the party is entitled to relief." The pleading at issue raised battery in the medical context, also known as lack of consent.[1] A physician who treats a

---

1. It is imperative to differentiate between a claim of "lack of consent" and "lack of informed consent" for purposes of our review. Appellant's third amended complaint alleges that a

patient without consent has committed a battery, even if the procedure is beneficial or harmless. *Lacey v. Laird* (1956), 166 Ohio St. 12, 1 O.O.2d 158, 139 N.E.2d 25, paragraph one of the syllabus; *Leach v. Shapiro* (1984), 13 Ohio App.3d 393, 395, 13 OBR 477, 479–480, 469 N.E.2d 1047, 1051–1052.

A negligence action and an action for battery, while sharing similar elements, are not the same cause of action. Negligence requires proof of the following elements: duty, breach of duty, causation, and damages. *Anderson v. St. Francis–St. George Hosp. Inc.* (1996), 77 Ohio St.3d 82, 84, 671 N.E.2d 225, 226–227. A battery claim, while sharing the elements of causation and damages, does not require the proving of a duty and a breach of that duty, but rather requires proof of an intentional, unconsented-to touching. *Id.* Under both claims, a defendant is liable only for harms that are proximately caused by the tortious act. *Id.*

### B. ANALYSIS

The following discussion took place during voir dire:

"MR. COMSTOCK: * * * We addressed with the Court in chambers the question of whether the plaintiff would be permitted to raise in opening statement or to introduce into evidence the matter pertaining to the lack—the claim of a lack of informed consent which was briefly raised during voir dire yesterday, and it is the defendant's position that it was never alleged in any of the pleadings, and that we took the discovery deposition of the plaintiff's expert, and he did not testify that as to any—he did not testify in support of any claim of lack of informed consent. * * * [A]nd it's our position that this comes very late for the defendants to effectively defend against such claim.

"MR. M. GOLDBERG: In response to that, Your Honor, the plaintiff was asked during her deposition whether or not she had been told that her stomach was—a substantial portion of her stomach was going to be taken out; she said no. So from a standpoint of being alerted, the defense was alerted to where the plaintiff was coming from.

"Our third amended complaint filed on August 9th, specifically pled that Dr. Lopez while attempting to repair said damage removed a substantial portion of

portion of her stomach was removed without authorization. Although the amended complaint raises a claim of lack of consent, the parties and the trial court confused this concept with a claim of lack of informed consent, as indicated by the continuous interchange of the two terms. A lack of consent arises when an unauthorized touching occurs. A claim of lack of informed consent arises when a patient has not been *fully* advised of the material risks inherent in the procedure.

the plaintiff's stomach without authorization, causing additional damages to the plaintiff * * *.

"* * *

"THE COURT: Thank you. At this time I'm going to recognize the issues raised by the defendants in this matter as to the tort of lack of informed consent. I'm going to ask you, Mr. Goldberg, until it can be further researched within the next couple of days with all parties working on that matter, as well as the Court working on this matter, that we stay away from that specific tort during your opening statements and a ruling will be made as quickly as possible so that if the Court changes her mind, you'll be able to delve into it before closing. Thank you."

During trial the appellant requested a final determination on appellee's motion *in limine*. The court responded:

"Okay. We're on the record indicating that Mr. Goldberg had filed an amended complaint dated on or about August 8th, and in the amended complaint there's a statement made about this, the tort that we discussed, informed consent. However, that was too late for notice to be given to the attorneys on the other side to defend."

The trial court freely permitted appellant to amend her complaint. However, it precluded appellant from introducing any evidence based upon her claim of lack of consent. In so doing, the court in effect ignored its prior entry allowing appellant to amend her complaint.

■ Civ.R. 15(A) clearly allows, and in fact urges, the trial court to allow the pleadings to be amended where justice so requires. It is inconsistent for the trial court to allow appellant to amend her pleadings only to exclude admission of evidence in support of the pleadings on the basis of unfair surprise. It is illogical to deny appellant the opportunity to admit evidence relating to lack of consent, inasmuch as the trial court acknowledged that the tort was pleaded in the third amended complaint. Appellant's third amended complaint clearly alleged that a portion of her stomach was removed "without authorization." Appellant's pleading meets the requirements set forth in Civ.R. 8(A). Appellee should have been put on notice of the claim. Moreover, appellant testified at her deposition that appellee removed a portion of her stomach without her consent or her knowledge. To remove a person's stomach without that person's authorization is precisely the heart of a claim of lack of consent. See *Anderson, supra.*

Appellee did not oppose or properly object to appellant's motion to amend the complaint, although appellee did answer the third amended complaint on August 24, 1995. Notably, appellee did not claim unfair surprise until immediately before trial. Appellee argued that the claim of lack of consent had not been pleaded, but

even if it had been pleaded in the third amended complaint, it was asserted too close to the time of trial to give appellee the opportunity to prepare a defense.

■ Appellee's objections were too little too late. The proper time to raise these objections would have been *before* the trial court granted appellant leave to amend the complaint.

■ Furthermore, there is no language in Civ.R. 15(A) that authorizes the court to exclude evidence in support of a complaint that the trial court allowed to be amended. The trial court's power was limited to granting a continuance if it determined that the administration of justice required it. See *Hall v. Bunn* (1984) 11 Ohio St.3d 118, 11 OBR 417, 464 N.E.2d 516. Appellant should have been given the opportunity to have her case heard on its merits and not dismissed based on an alleged procedural deficiency. See *Peterson, supra.*

The trial court's errors prevented appellant from presenting that portion of her case dealing with lack of consent. The merits of appellant's claim, as properly pleaded with the court's approval in the third amended complaint, were summarily dismissed on an erroneous interpretation of Civ.R. 15(A).

For the foregoing reasons, appellant's first assignment of error is sustained.

## III. ASSIGNMENT OF ERROR NO. TWO

■ "The trial court committed prejudicial error in refusing the introduction of testimony concerning a critical pathology report of Mrs. Barrette which had been a part of her hospital chart and a subject of review by all of the expert witnesses in the case."

Appellant contends that the trial court precluded her from eliciting testimony from the various medical experts regarding the pathology report prepared after the partial surgical removal of Barrette's stomach. The parties stipulated to the authenticity and admissibility of the pathology report, which the trial court then admitted into evidence. However, the court prohibited appellant from eliciting opinion testimony concerning the appropriateness or inappropriateness of appellee's decision to excise a portion of Barrette's stomach. Appellant argues that the trial court's ruling restricted her from reasonably using the pathology report during opening, closing, and examination of witnesses; prejudiced her case; and hindered its reasonable and adequate development.

## A. LAW

The admission of relevant evidence is within the sound discretion of the trial court. Its decision to admit or exclude such evidence will not be reversed absent

a showing of an abuse of discretion. *Rigby v. Lake Cty.* (1991), 58 Ohio St.3d 269, 569 N.E.2d 1056. Evid.R. 103(A) further provides:

"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected * * *."

To determine whether appellant had been substantially impaired in developing her case, it is necessary to set forth what elements must be proven in a medical negligence claim. In *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 129–130, 75 O.O.2d 184, 185, 346 N.E.2d 673, 676, the Supreme Court of Ohio declared:

"In evaluating the conduct of a physician and surgeon charged with malpractice, the test is whether the physician, in the performance of his service, either did some particular thing or things that physicians and surgeons, in that medical community, of ordinary skill, care and diligence would not have done under the same or similar circumstances, or failed or omitted to do some particular thing or things which physicians and surgeons of ordinary skill, care and diligence would have done under the same or similar circumstances."

## B. ANALYSIS

During trial, appellant was able to elicit the following testimony from appellee concerning the results of the pathology report:

"Q. Doctor, now let's take a look at the path report. The pathologist says, 'The external surface [of the stomach] is red-blue, smooth and glistening. The portion of the greater curvature measures 7.5 centimeters, and the lesser curvature measures 3.0 centimeters.' Now he goes on to say, 'Upon opening through the greater curvature the specimen exhibits an apparent normal mucosa.' Would you agree with that? * * * Doctor, he also stated after saying that it was an 'apparent normal mucosa' that there were 'no ulcers, polyps, or tumors are identified,' didn't he?

"A. Correct.

"Q. And the amount of the stomach that you removed was 40 percent?

"A. That is correct."

Appellant was able to cross-examine Dr. Timothy Pritchard, appellee's expert, as follows:

"Q. Let's take a look at the path report for the operation of 3–20; okay? * * * Coming down here, 'Upon opening the greater curvature of the stomach, the specimen exhibits an apparent normal mucosa.' * * * And there are no ulcers, polyps, or tumors are identified?

"A. That's correct."

Appellant's own expert, Joseph Bussey, M.D., testified:

"Q. Did the pathology report for the stomach portion that was removed indicate any diseased stomach or any problem with the stomach?

"A. It didn't indicate any disease or problem with the stomach that would be an indication for surgical removal of the stomach."

During Dr. Matthew Walsh's deposition, appellant's subsequent treating physician, appellant questioned Dr. Walsh as follows:

"Q. When you operated on her, Doctor, were you able to observe whether or not a portion of her stomach had been removed before?

"A. Yes, a portion had been removed before.

"Q. And at my request, did you check the operative report involving that surgery and the path report for that surgery and the previous surgery?

"A. Yes.

"* * *

"Q. And after looking at the operative report and the path report, was there anything in that, either of those reports, that indicated a pathological condition necessitating removal of 40 percent of the stomach?

"A. All I can say is on the basis of the operative report, it's difficult to determine why it was removed. And there is nothing in the pathology report that would say why it was removed."

The trial court later struck the portion of Dr. Walsh's testimony in which he rendered an opinion based on the pathology report. The court struck the testimony on the ground that the expert should be placed in the same position as the appellee at the time the surgery was performed.

Appellant was permitted to make reasonable use of the pathology report insofar as the testimony was limited to the facts identifiable in it. Furthermore, appellant was allowed to present opinion testimony from her experts that would indicate that even based on the operative report, there was no reason to remove a portion of Barrette's stomach.

According to the explicit language of *Bruni, supra,* the expert's opinion must be based upon the facts before the surgeon in question under the same or similar circumstances. As the pathology report was not available to appellee at the time of the surgery, the trial court properly limited opinion testimony based thereon.

Appellant's second assignment of error is without merit.

## IV. ASSIGNMENT OF ERROR NO. THREE

"The trial court abused its discretion by refusing to permit Mrs. Barrette to direct-examine a treating physician and cross-examine the defendant's expert witness on medical records which they had reviewed and upon which they had rendered opinions."

Appellant's third assignment of error is a recapitulation of her previous argument in the second assignment of error. Appellant begins by arguing that the trial court excluded Dr. Walsh's opinion based on the pathology report on a different basis from appellee's stated objections. Appellant contends that the trial court excluded Dr. Walsh's opinion based on the pathology report because it was elicited by a compound question and because Dr. Walsh's opinion was based upon facts not before appellee at the time he decided to perform the surgery. However, appellant alleges that appellee objected to the testimony because Dr. Walsh had not been previously identified as an expert witness. Appellant further argues that Dr. Walsh's testimony was proper under Evid.R. 701 because he was Barrette's subsequent treating physician who rendered an opinion based upon his personal observations.

Appellant then contends that the trial court altered Dr. Walsh's deposition testimony upon sustaining appellee's objection to that testimony. In effect, appellant argues that the trial court altered Dr. Walsh's testimony by deleting the portion in which he rendered an opinion based upon the pathology report.

Last, appellant argues that the trial court impermissibly prevented her from cross-examining appellee's witness, Lawrence Collins, M.D., concerning the pathology report when Collins testified that he had previously reviewed the pathology report and he had referred to it earlier on direct examination.

### A. LAW

Pursuant to Evid.R. 701, lay witness opinions are admissible if "(1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue."

Evid.R. 702(B) provides:

"A witness may testify as an expert if all of the following apply:

"* * *

"(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony[.]"

However, a trial court is vested with broad discretion over the admission and exclusion of evidence. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 163, 17

O.O.3d 98, 100, 407 N.E.2d 490, 493–494; *Zammit v. Soc. Natl. Bank* (1996), 115 Ohio App.3d 543, 561, 685 N.E.2d 850, 862–863. Thus, even in the absence of an objection, the trial court has the inherent authority to exclude or strike evidence on its own motion. *Oakbrook Realty Corp. v. Blout* (1988), 48 Ohio App.3d 69, 70–71, 548 N.E.2d 305, 305–307; *Neal v. Hamilton Cty.* (1993), 87 Ohio App.3d 670, 680, 622 N.E.2d 1130, 1137–1138.

## B. ANALYSIS

Dr. Walsh's deposition testimony reads in part:

"MR. GOLDBERG: After looking at the operative report and the path report, was there anything in that, either of those reports, that indicated a pathological condition necessitating removal of 40 percent of the stomach?

"MR. COMSTOCK: I'm going to object. * * * I don't think Dr. Walsh has been identified as an expert witness in any respect. I am here on the assumption that he is testifying not with regard to any of the issues of liability, but only—

"MR. GOLDBERG: That's correct.

"MR. COMSTOCK: —only with respect to his care and the reasons for his care. And I think you're getting away from that with this questioning, and I think it's inappropriate. So let me just go on the record with that."

During the trial, as Dr. Walsh's deposition was being read into the record, the following objections were noted:

"THE COURT: Thank you. Oh, this goes to the pathology report as to her stomach.

"MR. DAPORE: Well, again, it's a compound question, number one, on both the operative note and the pathology report. * * * In addition to that, at the time the objections were made, this is the first we were notified that he was going to be asked any questions with regard to expert testimony. But I think in maintaining the objection, is that it's a compound question; it asks for an opinion based on not what Dr. Lopez would have been faced with at the time of surgery but something that also comes in four days later when the pathology report is returned.

"THE COURT: Hindsight. * * * I think what we're talking about right now is the question dealing with whether or not the pathological report showed a report with the stomach, and that was something that Dr. Lopez would not have had access to at the time he was doing the surgery. * * * The same situation that we ran into yesterday that he had known. If they had done a biopsy on the stomach ahead of time, he would have knowledge whether or not there was anything the matter with the stomach.

"\* \* \*

"THE COURT: \* \* \* We were trying to put Dr. Bussey in the same position as Dr. Lopez was at the time he was making an observation. \* \* \* I'm going to make the same ruling on this one then. You can deal with the operative report but not on the path report."

The discussion continued at length, but the trial court clearly precluded Dr. Walsh's testimony on the pathology report because the testimony was based on hindsight. Regardless of appellee's stated objection, the trial court possesses the inherent power to strike evidence on its own motion. The trial court did not abuse its discretion by limiting Dr. Walsh's testimony concerning the pathology report. Dr. Walsh offered testimony concerning Barrette's condition while she was under his care. Additionally, he did discuss the results of the pathology report. Dr. Walsh was only prevented from rendering his opinion.

 During appellant's cross-examination of Dr. Collins, the following discussion took place:

"MR. S. GOLDBERG: For the record, our objection is, from the plaintiff's perspective, is based upon the fact that Dr. Collins has reviewed the record, he testified that he reviewed it for approximately 10 to 12 hours, and that when he was asked a question about the pathology report as it relates to the removal of the distal portion of the stomach, plaintiff was precluded from delving into that to determine whether or not the stomach was pathologically intact, whether there was anything remarkable. Plaintiff was precluded from asking the question.

"\* \* \*

"THE COURT: Mr. Goldberg, yesterday we were very specific that it was the form of the question and the way it was coming in, and you're not going to be precluded because you have one of the defendants that you're going to be able to get into that on, which is Dr. Lopez. In this particular situation with Dr. Collins, he is here, my belief, on very narrow—he's here as a urologist, and he made that clear on everything that he said. And to address your comment that he said that he viewed the file 10 to 12 hours prior to testifying, that came about 20 minutes after the question was even asked about the stomach—"

The express language of Evid.R. 702 states that to testify as an expert the witness must possess "specialized knowledge, skill, experience, training, or education." Dr. Collins is specialized as a urologist, not a gastroenterologist. Thus, he would not be qualified as an expert witness to offer his opinion as to the necessity of the surgery based upon the pathology report. Moreover, Dr. Collins could not offer an opinion based on the pathology report as a lay witness because

the opinion must be limited to only those facts that were before appellee at the time the surgery was performed.

Appellant's third assignment of error is without merit.

## V. ASSIGNMENT OF ERROR NO. FOUR

"The trial court abused its discretion by restricting Mrs. Barrette's attempt to introduce evidence of the permanency of her injury."

Appellant argues that during her redirect examination of Dr. Bussey she attempted to elicit testimony from him concerning the permanency of Barrette's injuries, but the trial court erroneously sustained appellee's objection to the question as being beyond the scope of cross-examination.

### A. LAW

Evid.R. 611(A) reads:

"The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect the witnesses from harassment or undue embarrassment."

The scope of cross-examination "lies within the sound discretion of the trial court, viewed in relation to the particular facts of the case. Such exercise of discretion will not be disturbed absent a clear showing of an abuse of discretion." *State v. Acre* (1983), 6 Ohio St.3d 140, 145, 6 OBR 197, 201, 451 N.E.2d 802, 806. Exclusion of questions asked on redirect examination that are not related to questions asked on cross-examination lies within the sound discretion of the trial court. See *State v. Spirko* (1991), 59 Ohio St.3d 1, 27, 570 N.E.2d 229, 257–258.

Evidence may also be excluded if its probative value is substantially outweighed by undue delay or the presentation of cumulative evidence. See Evid.R. 403(B).

### B. ANALYSIS

During appellant's redirect examination of Dr. Bussey the following discussion occurred:

"THE COURT: Doctor, do you feel—do you have an opinion based upon reasonable medical certainty whether or not Mrs. Barrette is going to require TPN for the rest of her life?

"MR. DAPORE: Objection.

"THE COURT: Sustained.

"MR. GOLDBERG: On what grounds?

"MR. DAPORE: Beyond the scope of cross-examination."

Appellant does not indicate any testimony elicited during Dr. Bussey's cross-examination that either referred to or was relevant to the duration or severity of Barrette's injury. However, assuming *arguendo* that the trial court improperly excluded Dr. Bussey's opinion on the permanency of Barrette's injuries, any error was harmless because Bussey had previously stated during cross-examination that "the ultimate result of that [surgery] has been that the lady has to be fed in her vein, in my opinion, for the rest of her life." Appellant also elicited similar testimony from Dr. Walsh:

"Q. Do you have an opinion based upon reasonable medical probability whether or not Mrs. Barrette is going to be on TPN or required to be on TPN for the rest of her life?

"A. Based on her current condition, yes."

Consequently, any alleged error appellant suffered by refusing to admit Dr. Bussey's opinion of the permanency of Barrette's condition on redirect examination was diminished by Dr. Walsh's testimony to the same question and Dr. Bussey's previous cross-examination testimony.

Appellant's fourth assignment of error is without merit.

## VI. ASSIGNMENT OF ERROR NO. FIVE

"The cumulative effect of the trial court's actions, errors of law, and abuses of discretion deprived Mrs. Barrette of a fair trial."

Appellant argues that the errors cited by appellant in the previous assignments of error, viewed in the aggregate, deprived her of a fair trial.

As appellant's only additional argument is that the cumulative effect of the other assignments of error require reversal and those other assignments of error have been previously determined to be without merit, this assignment of error is also without merit. See *Younce v. Baker* (1966), 9 Ohio App.2d 259, 264, 38 O.O.2d 316, 319, 224 N.E.2d 144, 147.

For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed on the issue of lack of consent, and the cause is remanded for further proceedings according to law and consistent with this court's opinion.

*Judgment affirmed in part*
*and reversed in part,*
*and cause remanded.*

GENE DONOFRIO and WAITE, JJ., concur.