[Cite as *Torres v. Getzinger*, 2012-Ohio-5613.]

STATE OF OHIO, COLUMBIANA COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

NICOLE TORRES, EXECUTRIX OF )
THE ESTATE OF PATSY CARVELLI, ) CASE NO.  11 CO 18
DECEASED, )
 )
　　　PLAINTIFF-APPELLANT, )
 )
　　　- VS - ) OPINION
 )
KARL E. GETZINGER, M.D., )
 )
　　　DEFENDANT-APPELLEE. )


CHARACTER OF PROCEEDINGS: Civil Appeal from Common Pleas
Court, Case No. 09 CV 676.


JUDGMENT: Reversed and Remanded.


APPEARANCES:
For Plaintiff-Appellant: Attorney Brian Kopp
Attorney Dominic Frank
6630 Seville Drive
Canfield, OH  44406


For Defendant-Appellee: Attorney Stacy Delgros
Roetzel & Andress, LPA
222 South Main Street
Akron, OH  44308


JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph Vukovich


Dated:  November 30, 2012

[Cite as *Torres v. Getzinger*, 2012-Ohio-5613.]
DeGenaro, J.

{¶1} Plaintiff-Appellant, Nicole Torres, Executrix of the Estate of Patsy Carvelli, Deceased, appeals the decision of the Columbiana County Court of Common Pleas, finding in favor of Defendant-Appellee, Karl E. Getzinger, M.D., following a jury trial in a medical malpractice and wrongful death action. On appeal, Torres argues that the trial court abused its discretion in excluding portions of testimony from the video deposition of her witness, Dr. Galita. She further argues that the trial court erred when it questioned her expert witness, Dr. Blandino, in a biased and partial manner.

{¶2} Upon review, Torres' arguments are meritorious in part. The trial court properly limited Dr. Galita's direct and cross examination testimony, either as a sanction for Torres' failure to identify Dr. Galita as an expert witness and disclose the subject matter of his testimony or because he was not qualified to render standard of care opinions for a family medicine physician. However, the trial court's questioning of Dr. Blandino was an abuse of discretion. Accordingly, the judgment of the trial court is reversed and this cause is remanded for a new trial.

## Facts and Procedural History

{¶3} On April 22, 2008, Carvelli presented to Dr. Getzinger, his primary care physician, with complaints of pain in his umbilicus. Dr. Getzinger diagnosed Carvelli with a hernia and referred him for surgery to repair the hernia, which was performed on June 6, 2008. On June 20, 2008, Carvelli returned to Dr. Getzinger's office with complaints of redness and discomfort in his left leg. Following a physical examination, Dr. Getzinger diagnosed Carvelli with superficial venous thrombosis, clotting or inflammation in a vein on the surface of the skin. On June 26, 2008, Carvelli was found dead in his home. An autopsy was performed by Dr. Dan Galita, a Deputy Coroner at the Cuyahoga County Coroner's Office. Dr. Galita determined the cause of death was a pulmonary embolism due to deep vein thrombosis ("DVT") in the left popliteal vein.

{¶4} On June 22, 2009, Torres filed a complaint against Dr. Getzinger for, inter alia, medical malpractice and wrongful death, alleging that Dr. Getzinger breached the standard of care by failing to properly diagnose and treat Carvelli for DVT and that Dr. Getzinger's negligence was a direct and proximate cause of Carvelli's death. On August

6, 2009, Dr. Getzinger filed an answer.

{¶5}    On December 14, 2009, the trial court issued a civil scheduling/pretrial order, which set the trial date for August 24, 2010 and also set discovery deadlines.

{¶6}    On April 23, 2010, Torres filed a motion for an extension of time to complete discovery.  Dr. Getzinger filed a reply brief to this motion on May 7, 2010.

{¶7}    On May 24, 2010, the court held a telephone conference regarding Torres' motion for an extension of time to complete discovery.  Counsel advised the court that they thought they could reach an agreement with regard to modified discovery deadlines, and the court instructed the parties to submit a Proposed Agreed Entry.  On May 28, 2010, the court issued the proposed order in which the parties stipulated that: (1) Torres shall identify her experts and provide expert reports 30 days after the completion of the deposition of Dr. Getzinger; and (2) Dr. Getzinger shall identify his experts and provide expert reports 30 days after Torres' expert identification deadline.

{¶8}    On June 14, 2010, the parties filed a joint motion for continuance of the August 24, 2010 trial date.  The parties noted that they were unable to schedule Dr. Getzinger's deposition until July 14, 2010, which would not allow them adequate time to complete discovery and depositions based on the current expert identification schedule. The court sustained this motion and issued a civil scheduling/pretrial order on July 23, 2010.  This order reset the trial date for April 26, 2011 and instructed Torres to disclose her expert witnesses and provide expert reports no later than 120 days prior to trial.  It further instructed Torres to disclose her fact witnesses no later than 90 days prior to trial. The order also directed the parties that counsel shall make their expert witnesses available for discovery depositions not later than 30 days after their disclosure.  Finally, the court stated that failure to identify witnesses, produce reports, or make an expert available for discovery deposition may preclude the witness' testimony at trial.

{¶9}    On April 20, 2011, Torres filed a notice that the videotaped trial deposition of Dr. Galita would be taken on April 22, 2011.  Before this deposition began, defense counsel objected to Dr. Galita's deposition being video recorded without the defense having the opportunity to conduct a discovery deposition beforehand and counsel further objected to any expert testimony because Dr. Galita was not identified as an expert

witness.

**{¶10}** On April 26, 2011, Dr. Getzinger filed objections to opinions expressed by Dr. Galita in his video deposition. Dr. Getzinger claimed that during Dr. Galita's deposition, Torres' counsel elicited expert opinions from Dr. Galita that were outside of his area of practice as a medical examiner and were not contained within his autopsy report. Specifically, Dr. Galita testified regarding the relationship between superficial venous thrombosis and DVT; that if there is a suspected superficial venous thrombosis, the physician should investigate for DVT; and that Carvelli's superficial venous thrombosis contributed to his death.

**{¶11}** Dr. Getzinger alleged that when Torres identified Dr. Galita as a potential trial witness, defense counsel requested the opportunity to take his deposition, but Torres failed to comply with this request. Then on April 18, 2011, Torres' counsel advised defense counsel that Dr. Galita was not available for a discovery deposition and that Torres' counsel would be placing Dr. Galita's trial testimony on videotape on April 22. Dr. Getzinger also alleged that Dr. Galita's untimely deposition did not give the defense a fair opportunity to have the deposition testimony evaluated by an expert witness or to prepare an adequate cross-examination.

**{¶12}** On April 26, 2011, Torres filed a response to Dr. Getzinger's motion to strike Dr. Galita's testimony. Torres alleged that she disclosed Dr. Galita as a potential witness via a letter on January 26, 2011 and that defense counsel was in possession of the autopsy report, which contained Dr. Galita's opinions.

**{¶13}** On April 26, 2011, the case came before the court for a jury trial. Prior to the start of the trial, the trial court addressed Dr. Getzinger's motion to strike Dr. Galita's video deposition. Defense counsel withdrew her request to strike the deposition in its entirety and clarified that she objected to Dr. Galita's testimony that superficial venous thrombosis is a "red flag" for DVT. In response, Torres' counsel argued that defense counsel's arguments related to the weight of the evidence, not the admissibility, and that Dr. Galita's testimony was admissible under Evid.R. 701. The court held the matter in abeyance.

**{¶14}** The trial court played Dr. Galita's deposition for the jury; however, the court

did exclude certain portions of his testimony from direct and cross examination. Following the video deposition, both parties presented testimony. Torres argued to the jury that Dr. Getzinger was negligent in failing to order an ultrasound of Carvelli's leg in order to determine whether a DVT was present and failing to advise Carvelli what to do if his symptoms worsened.

{¶15} Following deliberations, the jury returned a general verdict in favor of Dr. Getzinger. The jury also returned four interrogatories. In interrogatory one, the jury found that Dr. Getzinger was negligent. In interrogatory two, the jury found that because Dr. Getzinger performed two tests to rule out a possible DVT, he was negligent in failing to educate Carvelli about possible complications or symptoms. In interrogatory three, the jury found that Torres did not prove by a preponderance of the evidence that Dr. Getzinger directly and proximately caused Carvelli's death. The jury did not answer the fourth interrogatory based upon its answer to interrogatory three.

{¶16} On May 5, 2011, the trial court issued a judgment entry granting judgment in favor of Dr. Getzinger.

### Limitation of Witness' Direct Examination Testimony

{¶17} In her first of three assignments of error, Torres argues:

{¶18} "The trial court abused its discretion in granting Appellee's objections and motions to strike excerpts from the direct and redirect examination of Dr. Dan Galita, M.D. conducted during his videotaped trial deposition."

{¶19} "A trial court has broad discretion in determining whether to admit or exclude evidence. Absent an abuse of discretion that materially prejudices a party, the trial court's decision will stand." *Krischbaum v. Dillon*, 58 Ohio St.3d 58, 66, 567 N.E.2d 1291 (1991). The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶20} Torres argues that the trial court erred in excluding the following excerpt from the direct examination of Dr. Galita's video deposition:

Q: Okay. From an investigative standpoint—and I'm going to ask

you another formal question—to a reasonable degree of medical certainty, do you have any opinions as to what bearing superficial thrombophlebitis had in your investigation or in the ultimate cause of death?

[Defense Counsel]:  Objection.

[Dr. Galita]:  The superficial system is connected with the deep vein system, and a superficial vein thrombophlebitis can extend to the deep vein system and produce a DVT, deep vein thrombosis, followed by pulmonary embolism.

Q:  Okay.

[Dr. Galita]:  That's why it should be investigated.

[Defense Counsel]:  Move to strike.

Q:  Doctor, do you have any opinions, based upon a reasonable degree of medical probability within your field, as to whether or not the diagnosed superficial thrombophlebitis was a contributing factor to Patsy Carvelli's death?

[Defense Counsel]:  Objection.

[Dr. Galita]:  Yes, it was a contributing factor because a superficial, as I said, the superficial thrombophlebitis can extend to the deep vein system and can produce a DVT followed by a pulmonary embolism.  And this is a flag, always a flag; when we have a superficial thrombophlebitis, you have to investigate to see if there is a deep vein thrombosis, because this is life-threatening.

Q:  Okay.

[Defense Counsel]:  Move to strike.

{¶21} Torres contends that the trial court abused its discretion by striking this testimony because: (1) Torres had identified Dr. Galita as a witness and Dr. Getzinger was in possession of Dr. Galita's autopsy report; and (2) the fact that Dr. Galita was not a family medicine physician or testified regarding opinions outside of his autopsy report does not render his testimony inadmissible.  Torres claims that Dr. Galita's opinion

testimony should have been admitted pursuant to Evid.R. 702, or alternatively, Evid.R. 701. In response, Dr. Getzinger argues that Dr. Galita's testimony was properly excluded for two reasons: (1) Torres did not identify Dr. Galita as an expert witness and did not provide a report from Dr. Galita containing his expert opinions; and (2) Dr. Galita was not qualified to testify on the standard of care for a family medicine physician because he had no training or expertise in that field.

{¶22} A plaintiff must establish three elements in order to maintain a medical malpractice cause of action: (1) "the applicable standard of care recognized by the medical community, usually [established] through expert testimony"; (2) "a negligent failure on the part of the physician or hospital to meet the standard of care or render treatment conforming to this standard"; and (3) "a direct causal connection * * * between the medically negligent act and the injury." *Scatamacchio v. W. Res. Care Sys.*, 161 Ohio App.3d 230, 2005-Ohio-2690, 829 N.E.2d 1247, ¶ 14 (7th Dist.).

{¶23} Evid.R. 702, "Testimony by experts", provides:

A witness may testify as an expert if all of the following apply:
(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;
(C) The witness' testimony is based on reliable scientific, technical, or other specialized information. * * *

{¶24} First, we will address whether Torres properly identified Dr. Galita as an expert witness and disclosed the subject matter of his testimony. Civ.R. 26(E)(1)(b) provides that a party has the duty to supplement his answers to discovery inquiries into "the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify." *Id.* One of the purposes behind this

rule is to eliminate surprise. *Jones v. Murphy*, 12 Ohio St.3d 84, 86, 465 N.E.2d 444 (1984). A trial court may exclude expert testimony as a sanction for violating Civ.R. 26(E)(1)(b). *Id.* at syllabus; *Silver v. Jewish Home of Cincinnati*, 190 Ohio App.3d 549, 2010-Ohio-5314, 943 N.E.2d 577, ¶ 61 (12th Dist.).

**{¶25}** The record shows that Dr. Getzinger sent interrogatories to Torres requesting that Torres specifically identify each person she expected to call as an expert witness and state the subject matter on which the expert was expected to testify. On December 30, 2009, Torres responded: "Will provide in accordance with court order and/or local rule. However, Plaintiff anticipates that they will call all decedent's treating physicians and Plaintiff's expert, David A. Blandino, MD." On January 26, 2011, Torres' counsel sent a letter to defense counsel with a list of witnesses Torres may call, including Dr. Galita. The record shows that defense counsel sent letters to Torres' counsel in January 2011, February 2011, and April 2011, requesting dates to take witnesses' depositions, including Dr. Galita, if Torres intended to call them to testify.

**{¶26}** Accordingly, Torres failed to identify Dr. Galita as an expert witness. Although she stated that she anticipated calling "all decedent's treating physicians," this did not expressly identify Dr. Galita as her expert witness despite the interrogatory's request for specific identification. Moreover, Dr. Galita would not qualify as a "treating physician" in this case since he performed an autopsy on Carvelli after his death. Dr. Galita did not "treat" Carvelli for any of his medical symptoms before his death. Further, Torres had a duty to supplement her original response to the interrogatory pursuant to Civ.R. 26(E)(1)(b); however, Torres identified Dr. Galita as a potential witness on January 26, 2011. She did not identify him as an expert witness, and this disclosure occurred later than 120 days before trial, in violation of the court's July 23, 2010 pretrial scheduling order.

**{¶27}** In regards to providing an expert report, Torres argues that defense counsel was in possession of the autopsy report and thus, had notice of the subject matter of Dr. Galita's testimony. A review of Dr. Galita's deposition testimony reveals that he testified as both a fact witness and an expert witness. While most of his testimony concerned the results of the autopsy he conducted on Carvelli, the portions of the testimony to which Dr.

Getzinger objected contain expert opinions. Dr. Galita expressed opinions on the standard of care for a physician that diagnoses a patient with superficial venous thrombosis and causation opinions on how superficial venous thrombosis can progress into DVT. Dr. Galita's autopsy report does not contain these opinions, and the report does not mention superficial venous thrombosis. Because Dr. Galita is the Deputy Coroner who performed the autopsy, Dr. Getzinger would be on notice that Dr. Galita would testify regarding cause of death and his autopsy findings. However, Dr. Galita's report did not identify superficial venous thrombosis as a contributing factor in Carvelli's death. Furthermore, Dr. Getzinger would not anticipate that Dr. Galita would testify regarding standard of care opinions since he was not identified as an expert witness and expressed no such opinions in his autopsy report.

{¶28} Torres further argues that a party is not required to produce a report that reveals every opinion an expert witness possesses. This court has held that "Civ.R. 26(E)(1)(b) does not require a party to provide detailed information concerning the basis for an expert's opinion. Rather, the purpose of discovery is met where * * * the opposing party is adequately informed as to the subject matter about which the expert is expected to testify." *Metro. Life Ins. Co. v. Tomchik*, 134 Ohio App.3d 765, 783, 732 N.E.2d 430 (7th Dist.1999). However, the excluded testimony covered different subject matter from that contained in Dr. Galita's autopsy report. The autopsy report identified Carvelli's cause of death as a pulmonary embolism resulting from DVT. The excluded testimony concerned the standard of care for a physician when treating a superficial venous thrombosis and a causation opinion that superficial venous thrombosis can produce DVT. Because this opinion testimony concerns different subject matter, Torres should have disclosed it in response to Dr. Getzinger's interrogatory.

{¶29} Torres also claims that even though Dr. Galita was identified as a witness, Dr. Getzinger chose not to depose him and cannot argue unfair surprise. She argues that she did not have the burden to secure a deposition for Dr. Getzinger and if he was unable to depose Dr. Galita, he should have compelled the deposition with a subpoena. In response, Dr. Getzinger contends that Torres stated that she "may call" Dr. Galita but failed to confirm whether she actually intended to call him and failed to produce him for

deposition prior to trial. However, if Dr. Getzinger was unable to schedule a deposition for Dr. Galita, he could have compelled the deposition through a subpoena. *See* Civ.R. 30(A) and Civ.R. 45. The fact that Dr. Getzinger did not depose Dr. Galita may weaken his argument for unfair surprise. However, since Torres did not identify Dr. Galita as an expert witness or disclose the subject matter of his expert opinions, even if Dr. Getzinger had deposed Dr. Galita, he likely would not have asked Dr. Galita his opinions on these issues. Considering that Torres violated the court's July 23, 2010 pretrial scheduling order by failing to make these disclosures, it was not unreasonable for the trial court to limit this testimony.

**{¶30}** Therefore, the trial court properly limited Dr. Galita's deposition testimony as a sanction for Torres' violation of Civ.R. 26(E)(1)(b).

**{¶31}** We will now determine whether Dr. Galita was qualified to render opinions on the standard of care for a family medicine physician. Regarding the standard of care in a medical malpractice action, this court has explained that "[t]he expert testimony must explain what a medical professional of ordinary skill, care, and diligence in the same medical specialty would do in similar circumstances." *Scatamacchio* at ¶ 15. The testimony at issue describes what a physician must do when he or she diagnoses a patient with superficial venous thromboses; Dr. Galita opined that a physician must always investigate to determine if DVT is present.

**{¶32}** Regarding whether an expert witness is qualified to offer a standard of care opinion, the Ohio Supreme Court has explained:

> [T]he witness must demonstrate a knowledge of the standards of the school and specialty, if any, of the defendant physician which is sufficient to enable him to give an expert opinion as to the conformity of the defendant's conduct to those particular standards and not to the standards of the witness' school and, or, specialty if it differs from that of the defendant. Thus, it is the scope of the witness' knowledge and not the artificial classification by title that should govern the threshold question of his qualifications.

(Citation omitted.) *Alexander v. Mt. Carmel Medical Center*, 56 Ohio St.2d 155, 160, 383 N.E.2d 564 (1978).

{¶33} In *Alexander*, the Court found that a podiatrist was qualified to testify regarding the alleged malpractice of an orthopedic surgeon for improperly applying and failing to remove an ankle cast. The Court noted that the procedure of applying and removing a cast is not limited to orthopedic surgeons and that the podiatrist testified he had applied an ankle cast many times and was specifically instructed in podiatry school on the method of application. Thus, the Court found that the podiatrist was qualified as an expert because his field of medicine overlapped with an orthopedic surgeon in that he had formal training and actual clinical experience in applying and removing casts. *Id.* at 158-169. Further, the Court found that the podiatrist was qualified to testify regarding the standard of care in applying and removing casts, noting that the podiatrist testified that there was a common method to applying casts and the principles used to apply the plaintiff's cast were the same as he had been taught. *Id.* at 160.

{¶34} Here, Dr. Galita testified that he works as a forensic pathologist, is board certified in anatomic pathology, and is licensed to practice medicine in Ohio. His daily duties as a Deputy Coroner include performing autopsies, determining the cause and manner of death, and determining the presence or absence of natural disease. He admitted that he is not a family medicine physician and although he trained in family practice medicine in medical school, he had not practiced in that field in the last 30 years.

{¶35} Unlike the podiatrist in *Alexander*, Dr. Galita did not testify that he had any specific training in, or clinical experience with, treating superficial venous thromboses. While Dr. Galita gave an opinion as to what a physician should do when he or she diagnoses a patient with superficial venous thrombosis, he testified that his work as a forensic pathologist related to examining bodies for disease and cause of death, not treating patients who presented with the symptoms of superficial venous thromboses.

{¶36} Accordingly, because Dr. Galita did not demonstrate knowledge of the standards for family medicine in treating superficial venous thrombosis, the trial court did not abuse its discretion in limiting Dr. Galita's testimony.

{¶37} Moreover, Torres was not materially prejudiced by the trial court's decision to exclude portions of Dr. Galita's deposition testimony. She argues that she was prejudiced because the trial court excluded causation testimony from the only witness who was not hired to testify by either party. However, Dr. Getzinger's expert witness admitted on cross-examination that while it is rare for superficial venous thrombosis to progress to the deep venous system, it is possible. Accordingly, because causation testimony that superficial venous thrombosis can progress into DVT was admitted at trial, Torres has not demonstrated that she was materially prejudiced by the trial court's exclusion of Dr. Galita's testimony.

{¶38} Finally, Torres argues that even assuming Dr. Galita was not identified as an expert, his testimony was admissible under Evid.R. 701 because his opinions were based on his actual observations and were helpful to a clear understanding of his testimony and cause of death.

{¶39} Evid.R. 701, "Opinion testimony by lay witnesses", provides that: "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

{¶40} Torres cites to *Williams v. Reynolds Road Surgical Center, LTD*, 6th Dist. No. L-02-1144, 2004-Ohio-1645, in support of her argument that Dr. Galita's testimony was admissible under Evid.R. 701. In *Williams*, the Sixth District found that "courts have used Evid.R. 701 to permit treating physicians to render opinions based upon their personal observations and perceptions." *Id.* at *3. In that case, the physician witness was not identified as an expert, but he testified on the characteristics of carotid body tumors and on whether the mass in the plaintiff's neck appeared to be this type of tumor. The appellate court found that this testimony was admissible under Evid.R. 701 because the physician's testimony that the mass was not that type of tumor was based on his personal observation of the plaintiff and his testimony about his earlier experience with these tumors was relevant to support his opinion. *Id.* at *2-3.

{¶41} Here, Dr. Galita specifically testified that when examining Carvelli's body, he

found evidence of a blood clot in a vein behind the left knee, which was DVT. However, Dr. Galita testified that while he had information in his investigative file that Carvelli had been diagnosed with superficial thrombophlebitis, he did not find any evidence of superficial thrombophlebitis in the leg during the autopsy. He further explained that superficial thrombophlebitis is a clinical diagnosis. Thus, the testimony at issue was not based on Dr. Galita's personal observations of Carvelli. Furthermore, Dr. Galita did not testify that his opinion was based on personal experience or observations of superficial venous thrombosis and its relationship to DVT. Thus, this testimony was not admissible pursuant to Evid.R. 701.

{¶42} Therefore, the trial court did not abuse its discretion in limiting the direct examination testimony of Dr. Galita, either as a sanction for failing to identify Dr. Galita as an expert witness and disclose the subject matter of his testimony or because he was not qualified to render standard of care opinions for a family medicine physician. Moreover, Torres has not demonstrated that she was materially prejudiced by the exclusion of this testimony. Accordingly, the first assignment of error is meritless.

### Limitation of Witness' Cross-Examination Testimony

{¶43} Torres argues in her second assignment of error:

{¶44} "The trial court abused its discretion in granting counsel for Appellee's motion to strike excerpts from her own cross examination of Dr. Dan Galita, M.D. conducted during Dr. Galita's videotaped trial deposition."

{¶45} Torres contends that the trial court abused its discretion in excluding portions of the cross-examination of Dr. Galita from the video deposition. She notes that Dr. Getzinger did not object to these portions of testimony during the deposition. The trial court struck the following portions of cross-examination from the video deposition:

> Q: All right. Do you agree that umbilical hernia repair surgery is a low risk factor for DVT and PE [pulmonary embolism]?
>
> [Dr. Galita]: Yes, it is. It's, I would say it's a minor surgery.
>
> Q: Okay, thank you. Now, you mentioned to Mr. Kopp that you feel that Mr. Carvelli's superficial venous thrombosis was a contributing factor to

his death; is that what you've said?

[Dr. Galita]: I—I—the main point, I would say it was—it was a flag for any physician that the case should be investigated further because can extend to deep vein system, can produce a thrombus, which migrate to the heart.

Q: Well, Doctor, isn't it true that superficial venous thrombosis is usually a benign, self-limiting disease?

[Dr. Galita]: Yes, it is.

Q: And that it is very unusual for a superficial venous thrombosis to progress to a pulmonary embolism; you would agree with that, wouldn't you?

[Dr. Galita]: I agree, but the problem is the superficial thrombophlebitis can extend the inflammation to the deep system and generate a thrombus.

Q: I understand that's your opinion, Doctor. I didn't see anywhere in your autopsy report or your anatomic diagnoses or cause of death or list of other conditions any reference to superficial venous thrombosis?

[Dr. Galita]: That's true.

Q: Is it there?

[Dr. Galita]: It's not necessary to have superficial thrombophlebitis. You can have a DVT just from the start for different reasons.

Q: I understand. My question is a little more narrow than that.

[Dr. Galita]: Uh-huh, oh.

Q: I did not see your reference, you reference anything with regard to a superficial venous thrombosis in your autopsy report; is that true?

[Dr. Galita]: That's correct; because he went to his physician; as far as I understand, the superficial thrombophlebitis was treated, and he was found dead four days later. And usually it's a clinical diagnosis.

* * *

Q: If you felt that superficial venous thrombosis played a

contributing role to Mr. Carvelli's death, wouldn't that have been wise for you to place that in your autopsy report?

[Dr. Galita]:  Yes, but, oh, well.

**{¶46}**  Although no party objected to the testimony at issue during the deposition, the trial court was not precluded from excluding this testimony at trial.  A trial court has broad discretion in admitting and excluding evidence.  *Ferrell v. Ferrell*, 7th Dist. No.  01-AP-0763, 2002-Ohio-3019, ¶ 59.  Furthermore, this court has held that "even in the absence of an objection, the trial court has the inherent authority to exclude or strike evidence on its own motion."  *Barrette v. Lopez*, 132 Ohio App.3d 406, 417, 725 N.E.2d 314 (7th Dist.1999).  *See also Neal v. Hamilton Cty.*, 87 Ohio App.3d 670, 680, 622 N.E.2d 1130 (1st Dist.1993) ("Whether to exclude or admit evidence *sua sponte* is discretionary with the court.").

**{¶47}**  Here, the cross-examination testimony at issue related to the direct-examination testimony that the trial court properly excluded, as discussed above.  Thus, the trial court's decision to exclude this testimony was not unreasonable or arbitrary.  Accordingly, the second assignment of error is meritless.

### Trial Court's Interrogation of a Witness

**{¶48}**  In her third assignment of error, Torres argues:

**{¶49}**  "The trial court abused its discretion in comparing Plaintiff-Appellant's medical expert witness to a 'Monday morning quarterback' in the presence of the jury."

**{¶50}**  Torres argues that the trial court abused its discretion when it examined her expert witness, Dr. David Blandino, a family physician, in a biased manner that undermined his credibility.

**{¶51}**  Evid.R.  614(B), "Interrogation by court," provides: "The court may interrogate witnesses, in an impartial manner, whether called by itself or by a party."

**{¶52}**  As this court has previously stated:

Evid.R. 614(B) permits a trial judge to interrogate a witness as long as the questions are relevant and do not suggest a bias for one side or the other.

> *State v. Blankenship*, 102 Ohio App.3d 534, 548, 657 N.E.2d 559 (12th
> Dist.1995).  Absent a showing of bias, prejudice, or prodding of the witness
> to elicit partisan testimony, it is presumed that the trial court interrogated
> the witness in an impartial manner in an attempt to ascertain a material fact
> or develop the truth.  *Id.*  A trial court's interrogation of a witness is not
> deemed partial for purposes of Evid.R. 614(B) merely because the
> evidence elicited during the questioning is potentially damaging to the
> defendant.  *Id.*

*Metro. Life Ins. Co.*, *supra*, at 794.

{¶53}  The trial court's questioning of witnesses during trial, pursuant to Evid.R. 614(B), is reviewed under an abuse of discretion standard.  *Id.* at 795.  As discussed above, the term "abuse of discretion" connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶54}  Torres specifically objects to the following conversation between the court and Dr. Blandino wherein the court used the term "Monday morning quarterback"[1]:

> THE COURT:  Doctor, let me ask you this.  When we were picking this jury
> the term "Monday morning quarterback" came out.  Okay?  When you
> testify as an expert, and you've had some experience doing that sort of
> thing.
> DR. BLANDINO:  Yes.
> THE COURT: I assume that you don't want to be thought of as a Monday
> morning quarterback, okay?
> DR. BLANDINO:  Correct, yes.
> THE COURT:  Your job is to review the records –
> DR. BLANDINO:  Yes.

---

[1] A "Monday morning quarterback" is "a person who criticizes the actions or decisions of others after the fact, using hindsight to assess situations and specify alternative solutions."  *Monday morning quarterback*, http://dictionary.reference.com/browse/monday+morning+quarterback (accessed June 8, 2012).

THE COURT: -- the circumstances, the items that we talked about on that one we called the "Diagnosis Chart."

DR. BLANDINO: Yes.

THE COURT: Okay. And put yourself in the position of the physician who on one day had to make a reasonably quick and accurate decision.

DR. BLANDINO: Yes.

THE COURT: So it's pretty easy for us to decide whether Ben Rothlesberger should have thrown that pass the day before, on Monday morning.

DR. BLANDINO: Yes.

THE COURT: Okay. But your role is considerably more professional in how you approach it.

DR. BLANDINO: I hope I'm more professional than Mr. Rothlesberger, yes.

{¶55} Following this exchange, Torres' counsel objected to the trial court's use of the term "Monday morning quarterback" due to its potential prejudicial effect on the jury. The court referred to its freedom of speech, and then noted that the term was already used during voir dire. The court further explained that it believed the term was fair to put the matter in context and gave counsel the opportunity to ask further questions. The court did not issue a curative instruction to the jury following the objection.

{¶56} In response to Torres' claims that the trial court exhibited bias, Dr. Getzinger contends that the court's comments on Monday morning quarterbacking were a proper attempt to clarify the expert witness' testimony. In order to determine whether the trial court's questioning was relevant to the expert witness' testimony, it is necessary to examine the context of these questions.

{¶57} On cross-examination, defense counsel began questioning Dr. Blandino regarding his deposition testimony on whether more likely than not, Carvelli had a DVT on June 20, 2008. Dr. Blandino testified during the trial that he could say with reasonable certainty that Carvelli had a DVT on June 20, but during the deposition he had responded that he could not say for sure whether Carvelli more likely than not had a DVT. On

redirect, Dr. Blandino testified regarding the standard of care; he stated that it was his opinion based upon a reasonable degree of medical certainty that the facts of the case would have required Dr. Getzinger to order an ultrasound for Carvelli. Regarding his deposition testimony, Dr. Blandino explained that he had been asked if he had been Carvelli's doctor, did he think the probability of a DVT was more likely than not. However, Dr. Blandino explained that "more likely than not" was not the standard a doctor would use in deciding to order an ultrasound for a DVT. He believed that a doctor in Dr. Getzinger's position more likely than not was required to perform further testing for DVT. Dr. Blandino further testified that in retrospect, he could say with reasonable certainty that a DVT was present on June 20 and would have shown on an ultrasound.

**{¶58}** On recross-examination, defense counsel questioned Dr. Blandino again on his deposition testimony. Counsel noted that during the deposition, Dr. Blandino had not stated that his opinion was based on what a doctor would have known on June 20, but now in retrospect he could say a DVT was more likely than not present. Following this exchange about testifying regarding what the doctor knew at the time and testifying in hindsight, the trial court began questioning Dr. Blandino on Monday morning quarterbacking.

**{¶59}** Based upon the context of the trial court's questioning, the trial court was attempting to clarify Dr. Blandino's testimony. In a medical malpractice case, opinions on the standard of care are based upon what the physician knew at the time he or she treated the patient, and the standard of care is never based upon hindsight. *See Ross v. St. Elizabeth Health Ctr.*, 181 Ohio App.3d 710, 2009-Ohio-1506, 910 N.E.2d 1047, ¶ 34 (7th Dist.). Dr. Blandino's testimony related to both issues of the standard of care and proximate cause. The jury may have been confused as to whether Dr. Blandino was forming standard of care opinions based on what Dr. Getzinger knew at the time he treated Carvelli or based on the information Dr. Blandino currently knew. Thus, the trial court was attempting to clarify that Dr. Blandino was not "Monday morning quarterbacking" or viewing Dr. Getzinger's decisions in hindsight. The term was also relevant because it was used during voir dire and thus, the jury was already familiar with the term and its context to the case.

**{¶60}** However, while the trial court's questioning was relevant to the issue of hindsight, the court's questions exceeded impartial clarification of the issues in the case. The trial court questioned the expert in a manner that could suggest to the jury the court's opinion of the witness' credibility and the court's belief that the witness was Monday morning quarterbacking. Furthermore, as Torres argues, the trial court's comments also raised an issue that was not supported by the evidence. The court suggested that Dr. Blandino must put himself in Dr. Getzinger's position: "And put yourself in the position of the physician who on one day had to make a reasonably quick and accurate decision." However, there is no evidence in the record that Dr. Getzinger had to make a quick decision during his office visit with Carvelli.

**{¶61}** Torres cites to *Bates v. Bill Swad Leasing Co.*, 17 Ohio App.3d 153, 477 N.E.2d 1224 (10th Dist.1984), for the proposition that a trial judge should not question witnesses on irrelevant matters thereby suggesting the existence of an issue that the parties neither proved nor raised. *Bates* was a personal injury action wherein the plaintiff was struck by defendant's vehicle. During the trial, the plaintiff and defendant testified differently on whether the plaintiff was standing with one foot in the street waving down the defendant or whether the plaintiff was standing in the street with his back to the defendant's vehicle when the accident occurred. Following cross-examination, the trial court questioned the plaintiff about the number of "beer joints" he passed on the way to the scene of the accident. The Tenth District found the trial court's questioning was prejudicial error because there was nothing in the record indicating a foundation for these questions, and the questions suggested to the jury that the plaintiff was likely to buy and consume alcohol. *Id.* at 154-155.

**{¶62}** Here, the trial court's questioning could suggest to the jury that Dr. Getzinger's treatment of Carvelli was influenced by a need to make a quick decision. Because the record does not contain any evidence that Dr. Getzinger was faced with time constraints during Carvelli's office visit, the trial court prejudicially raised an issue that was not supported by the evidence and that may have influenced the jury's determination on whether Dr. Getzinger was negligent in failing to order an ultrasound. Thus, we conclude that the trial court's questions on "Monday morning quarterbacking" and comments on the

need to make a quick decision were unreasonable. Accordingly, the third assignment of error is meritorious.

## Conclusion

{¶63} In sum, the assignments of error are meritorious in part. The trial court properly limited Dr. Galita's direct and cross-examination testimony, either as a sanction for Torres' failure to identify Dr. Galita as an expert witness and disclose the subject matter of his testimony or because he was not qualified to render standard of care opinions for a family medicine physician. Moreover, Torres has not demonstrated that she was materially prejudiced by the exclusion of this testimony. However, the trial court's questioning of Dr. Blandino was prejudicial and an abuse of discretion. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for a new trial.

Donofrio, J., concurs.

Vukovich, J., concurs.